BELL MORRIS, Appellant v. THE EXCELSIOR COAL COMPANY.

$\frac{95}{116}\frac{639}{621}$

**Conflict in Evidence: JURY QUESTION.** Where the testimony is conflicting as to whether deceased was killed through his own negligence in blasting and removing coal, or through the negligence of the defendant in not properly caring for the roof, the issue should be left to the jury.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

SATURDAY, OCTOBER 12, 1895.

The plaintiff is administratrix of the estate of J. D. Morris, deceased. The defendant is a corporation engaged in mining coal. The deceased was employed by the defendant to work in the mine. While so employed the roof of that part of the mine in which he was at work caved, and fell upon him, killing him instantly. This action was brought to recover the damages sustained by his estate on account of his death. At the close of the introduction of the evidence the court, on motion, directed the jury to return a verdict for the defendant. The plaintiff appeals.— *Reversed*.

*James Carroll* and *L. C. Blanchard* for appellant.

*J. F. & W. R. Lacey* for appellee.

Rothrock, J.—It appears from the evidence that the mine in which the deceased was at work had been operated for several years, and that part of it where the casualty occurred had been worked out, except the sides of the entries. The deceased and others were engaged in one of the entries, removing the sides or pillars of coal which supported the roof of the entries. The mine was entered from the surface of the ground by a shaft about eighty feet deep, and the entry extended from the bottom of this shaft, a long distance, into the mine, and many rooms had been worked out in different directions. The method adopted to remove the sides or support of the entry was to work in the entry furtherest from, and proceed with the work towards the shaft. As the work progressed the entry closed up after the miners, by reason of the removal of the supports of the roof. It was the duty of the miners to protect themselves by props or supports at all parts where the roof became insecure by reason of the removal of the coal from the sides. The place in the entry where Morris was killed was some two thousand five hundred feet from the shaft, and the coal was moved to the shaft in cars, upon a track laid for that purpose. It ought to be stated that the main entry from the shaft had branches leading to different parts of the mine. It is conceded that it was the duty of the defendant to keep and maintain the roofs of the entries in a reasonably safe condition, so as to protect the miners from injury by falling slate, stone, or earth from other causes than their own work. This was done by means of props or supports where they appeared to be necessary, and by inspection of the roof at points where there were no

supports, and putting in additional supports, if required.

The main contention of the plaintiff upon the trial was that Morris was killed by reason of the negligence of the defendant in failing to put in supports at the place where he was killed. The defense appears to have been placed upon the ground that the roof fell because of the negligence of Morris and his fellow miners in blasting and removing the coal, and that there was no negligence on the part of the defendant in the matter of furnishing a reasonably safe entry, nor in making inspection thereof at reasonably proper intervals. We have examined the evidence and studied the record with the utmost care, and our conclusion is that the case ought to have been submitted to the jury. As we understand the testimony of the witnesses, there is a decided conflict in the evidence whether the work of the miners caused the slate to fall from the roof. It appears that Morris was engaged in shoveling coal upon a car. While so engaged he heard the slate roof crack, and he started to run down the entry toward the shaft, when he was caught by the falling slate. One witness stated that he was killed twenty feet from the place where he was shoveling coal on the car. Other witnesses place it at a much less distance. There is some evidence which also tends to show that the place where the mining was done was back of where the car stood. Now, it is to be conceded that, if it should be found that the slate did not fall by reason of the work of the miners, the plaintiff cannot recover, unless there is such a case made that the defendant might fairly be found to be negligent in not giving proper attention to the safety of the roof of the entry. The evidence shows beyond all question that there are many places in the roofs of mines that do not require props or supports, because of the roofs being composed of slate or stone. But there is evidence tending to show that such places

in the roof, by lapse of time, become dangerous, and require props. The defendant, as it appears, was in the habit of making daily inspection of the roof, by tapping it with the dull end of a pick. Whether daily inspection was required, we do not determine. The question whether an inspection had been made on the morning of the accident is somewhat in doubt. Of course, it is to be understood that we do not hold that the fact that the roof was not propped at the place of the accident authorizes a recovery. The men working in the mine know that props are only used where they are thought to be necessary, and by their employment they take the risk of the service with the roofs in that condition, but with the obligation on the defendant to make proper inspection of the roof, and to remedy defects therein. We are not without doubt on this point in the case, but our conclusion is that the motion to direct a verdict should have been overruled.—*Reversed*.