Rose Worthington, Appellee, v. Clifford Worthington, Appellant.

No. 47038.

October 14, 1947.

Chauncey A. Weaver, of Des Moines, for appellant.

Kalman Musin, of Des Moines, for appellee.

HALE, J.—On the 21st day of April 1921, the plaintiff and the defendant left Albia, Iowa, and went to Kirksville, Missouri. Plaintiff claims that on that day a marriage ceremony was performed but defendant denies that any such ceremony took place. They apparently returned to Iowa at once and continued to live as husband and wife for twenty-six years prior to the application for divorce. Of late years there were periods when they did not live together.

Three children were born to the couple; a boy in 1933; a girl in 1935; and a second boy in 1937. Of these children the defendant has denied that he is the father of the girl.

Defendant is not in good health; has been for about fifteen years a victim of palsy. He was formerly a miner. Polk county relief organizations have contributed to the support of plaintiff and her children, and defendant was occasionally present in the household.

On the trial the judge found that the defendant was guilty of cruel and inhuman treatment, and there was a decree accordingly, granting the custody of the daughter and the younger son to the mother, and the oldest, a boy of about fourteen years of age, was permitted to remain with the father in Knoxville, Iowa, where they make their home.

I. Defendant argues that the evidence does not support plaintiff's claim that there was a formal marriage. It is true that there was no evidence other than the rather uncertain statement of the plaintiff that they were married by a justice of the peace in Missouri, and it might be doubted that the evidence discloses a ceremony of marriage. When the parties returned to Iowa, however, for a period of twenty-six years they assumed the relationship of husband and wife openly and notoriously and there was no denial of such relationship until the institution of the divorce proceeding, and in fact, not until

the filing of the amended and substituted answer did the defendant deny that they were husband and wife.

It is shown by the evidence of neighbors and acquaintances that the plaintiff was constantly referred to as Mrs. Worthington, and the testimony of Mrs. McGee, a social worker, shows that when request for relief was made by the Worthingtons they gave a date and place of marriage. Under these circumstances we must find that there was, in fact, a common-law marriage existing between the two. Cases cited by defendant are not applicable to the facts here. See, Love v. Love, 185 Iowa 930, 171 N. W. 257; In re Estate of Wittick, 164 Iowa 485, 145 N. W. 913; Smith v. Fuller, 138 Iowa 91, 115 N. W. 912, 16 L. R. A., N. S., 98; In re Estate of Clark, 228 Iowa 75, 103, 290 N. W. 13, and cases cited.

II. We consider first defendant's assigned Error No. IV. Defendant charges that the trial court incorporated in the final decree material parts of an answer which had been superseded by an amended and substituted answer, when the original answer had not been introduced in evidence, and asserts such action on the part of the court was error, citing various authorities. It is true that the original answer filed in this case by an attorney, who is not now attorney for the defendant, did admit that the parties were husband and wife. Later an amended and substituted answer was filed in which the defendant denies that any marriage ceremony between plaintiff and defendant ever took place, as alleged by plaintiff, and further alleges that common-law marriages were forbidden by the state of Missouri at the time of the alleged marriage. However, whether this amounts to a denial of a common-law marriage is not material. We have carefully examined the decree of the district court. The court refers to the pleadings, but no language in the decree indicates that it is based upon the admissions of the defendant in his first answer and later superseded by the amended and substituted answer. The court found, and we think correctly, that the marriage relationship existed between the parties, but so found from the testimony introduced.

III. Plaintiff's petition is based upon two grounds: 1. Cruel and inhuman treatment as to endanger the life and impair the health of the plaintiff; and 2, that during the married

life of plaintiff and defendant the defendant has become addicted to habitual intoxication. The district court did not find, and we do not find from the evidence, that plaintiff sustained her allegation of habitual intoxication. The decree of the district court finds "that the defendant has been guilty of such cruel and inhuman treatment as would entitle plaintiff to a divorce from the defendant."

Code of 1946, section 598.8(5), gives as one of the causes for which a divorce decree may be granted: "When he is guilty of such inhuman treatment as to endanger the life of his wife," and such has been the law for many years.

The acts of physical violence shown by the record and found in the testimony of the plaintiff are: She alleges that about ten years ago there was an argument between the two and that he struck her head "and the doctor came, the knot was on my head," and she further alleges that five times while they were living on Fifteenth and Pleasant Streets he had beaten her.

The witness who attempted to corroborate plaintiff's story as to these physical assaults was her mother, who stated that at one time when she visited her daughter she had what she described as a "knot" on her head. Her knowledge, however, of the cause of the injury was what the plaintiff told her.

There is, however, another form of cruel and inhuman treatment fully shown by the evidence. Defendant repeatedly accused the plaintiff of infidelity, and he expressly makes such statement in the amended and substituted answer and petition for the custody of the two sons, filed on December 23, 1946. Therefore there was of public record, from that date until the signing of the decree on March 1, 1947, a charge of adultery of which there was no evidence except the testimony of defendant and of a sister to certain admissions which she claims were made by the wife and of which there is no further evidence. The court found that such charges were unsupported, since it found in favor of the wife. We are inclined to agree with the court that the charges of immoral conduct were not supported.

Further testimony of the husband along this line need not be set out and we consider it unworthy of credence. The history of the conduct of the husband shows continued neglect

of his duties with respect to his family and his wife. We therefore hold that his charges were unsupported. Such conduct on the part of a spouse has been repeatedly held by this court to be cruel and inhuman treatment, and of such conduct there can be no question in this case of failure of corroboration. See Haight v. Haight, 1900, Iowa, 82 N. W. 443; Turner v. Turner, 122 Iowa 113, 97 N. W. 997; Martin v. Martin, 150 Iowa 223, 129 N. W. 816; Anderson v. Anderson, 189 Iowa 95, 174 N. W. 665; Massie v. Massie, 202 Iowa 1311, 1312, 210 N. W. 431, 432.

In the Massie case:

"We have said that there may be cruel and inhuman treatment such as to endanger life, without any physical violence. * * * Also, that unwarranted charges and accusations of unchastity constitute cruel and inhuman treatment, and are sufficient to justify the granting of a divorce." (Citing cases.)

In the case of Blazek v. Blazek, 216 Iowa 775, 777, 249 N. W. 199, 200, it is stated:

"It is the settled law of this state that there may be cruel and inhuman treatment such as to endanger life without any physical violence, and that unwarranted charges and accusations of unchastity constitute cruel and inhuman treatment, and are sufficient to justify a divorce."

See, also, Miller v. Miller, 203 Iowa 1218, 211 N. W. 705, 214 N. W. 613; McClurg v. McClurg, 207 Iowa 271, 222 N. W. 862; Williges v. Williges, 215 Iowa 960, 962, 247 N. W. 222, 223, in which it is said:

"It is quite well settled that a party is entitled to a divorce on the ground of cruel and inhuman treatment such as to endanger life, where there are unwarranted charges and accusations of unchastity."

In Heath v. Heath, 222 Iowa 660, 663, 269 N. W. 761, 762, the court holds:

"Counsel for plaintiff contend there was no evidence of cruel and inhuman treatment. The character of the charge made against his wife, both in his sworn petition and as a

witness in the case, if not substantiated, furnishes ample evidence of cruel and inhuman treatment. To compel this woman to continue to live with the plaintiff would be intolerable.''

In the instant case we are inclined, as we generally are where the testimony is in conflict, to give consideration to the decision of the trial court which had the opportunity of hearing and observing the witnesses. See Robbins v. Robbins, 234 Iowa 650, 652, 12 N. W. 2d 564, 565, where we quoted from Massie v. Massie, supra, as follows:

''We have repeatedly said: 'In cases of this kind, although they are in equity, and triable de novo here, in the presence of a serious conflict in the testimony, we are disposed to give serious consideration to the decision of the trial court, in determining final disposition of the case here.' ''

The court made an allowance of $10 each month beginning on the first day of February 1947, and on the first day of each month thereafter, as child support for Marilyn and Donald Worthington, whose custody was awarded to the mother. We recognize that the testimony shows that the defendant is, to a considerable extent, incapacitated, but the mother is also unable to provide all of the means necessary for their subsistence; that both have been on relief and there is no showing in the evidence that their financial condition has improved. In view of all the circumstances we are not disposed to disturb the court's allowance.

We are satisfied that the plaintiff has established her right to a decree; that the holding of the district court is correct.— Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.